# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **HUBERT ARVIE** | **CIVIL ACTION NO. 6:09-0325** |
|     **LA. DOC #122010** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **ROBERT C. TANNER, WARDEN** | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C.

§ 2254 on December 16, 2008 by *pro se* petitioner Hubert Arvie.[1] Petitioner is an inmate

in the custody of Louisiana's Department of Public Safety and Corrections. He is

incarcerated at the Rayburn Correctional Center, in Angie, Louisiana. Petitioner attacks

his 1989 armed robbery conviction entered in the Fifteenth Judicial District Court for

Vermilion Parish, Louisiana. This matter has been referred to the undersigned for review,

report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the

standing orders of the court. For the following reasons it is recommended that the petition

be **DENIED AND DISMISSED WITH PREJUDICE**.

---

[1] The undersigned has given petitioner the benefit of the "mailbox" rule. Petitioner signed the original *habeas* petition which was submitted to the United States District Court for the Eastern District of Louisiana on December 16, 2008. [*See* rec. doc. 1-5, 57; *see also* rec. doc. 1-4, pg. 3]. Therefore, December 16, 2008 is the earliest date that petitioner could have handed the petition to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Spotsville v. Cain*, 149 F.3d 374 (5th Cir. 1998) adopting the rationale of *Houston v. Lack* for *habeas corpus* petitions.

## STATEMENT OF THE CASE

On May 19, 1989, petitioner was convicted of armed robbery in the Fifteenth Judicial District Court for Vermilion Parish, Louisiana under Docket Number 88-25689. On July 31, 1989, petitioner was sentenced as an habitual offender to serve 50 years imprisonment.

On October 2, 1991, petitioner's conviction, adjudication, and sentence were affirmed on direct appeal by the Louisiana Third Circuit Court of Appeals. Petitioner's request for rehearing was denied on November 31, 1991. *State of Louisiana v. Hubert Arvie*, CR98-1209 (La. App. 3rd Cir. 1991), 587 So.2d 220 (Table). Petitioner's request for review in the Louisiana Supreme Court was denied on January 17, 1992. *State of Louisiana v. Bro. Hubert Arvie*, 91-KO-2547 (La. 1992), 591 So.2d 707. Petitioner did not seek further direct review in the United States Supreme Court.[2]

Litigation raising unknown claims remained pending in the Third Circuit and Louisiana Supreme Court from sometime prior to September 30, 1992 through November 19, 1993. *See Bro. Hubert Arvie v. State of Louisiana*, 91-792 (La. App. 3 Cir. 9/30/1992), 606 So.2d 1010 (Table); *Bro. Hubert Arvie v. State of Louisiana,* 93-0264

---

[2] Review of United States Supreme Court cases reveals that petitioner has sought certiorari on three occasions. However, none of these cases are related to the direct appeal of petitioner's conviction. *See Arvie v. Andrich*, 538 U.S. 983, 123 S.Ct. 1791, 155 L.Ed.2d 676 (Mem.)(2003) (application for writs from a judgment of the Louisiana Third Circuit Court of Appeal in the matter of *Arvie v. Andrich*, 2001-00899 (La. App. 3 Cir. 2/6/2002), 812 So.2d 156 (Table)); *Arvie v. McHugh*, 523 U.S. 1127, 118 S.Ct. 1815, 140 L.Ed.2d 953 (1998) (application for writs from a judgment of the United States Fifth Circuit Court of Appeal); and *Arvie v. Lastrapes,* 523 U.S. 1051, 118 S.Ct. 1371, 140 L.Ed.2d 519 (1998) (application for writs seeking review of a 5th Circuit decision in a §1983 action entitled *Arvie v. Lastrapes, et al.*, 106 F.3d 1230 (5th Cir. 1997)).

(La. 3/19/1993), 614 So.2d 72; *Hubert Arvie v. State of Louisiana*, 93-0264 (La.

6/4/1993), 618 So.2d 418; *Bro. Hubert Arvie v. State of Louisiana*, 93-0264 (La.

11/19/1993), 629 So.2d 388; *See also Bro. Hubert Arvie v. State of Louisiana*, 92-67 (La.

App. 3 Cir. 12/9/1992), 610 So.2d 282 (Table).

In August, 1994, petitioner filed a Public Records Act request.  By Order dated

October 21, 1994, the trial court ordered the district attorney to provide petitioner with the

discoverable portion of his file.  Although the district attorney apparently complied with

the request, in July, 2006, petitioner filed a Motion to Enforce the 1994 Order.  Following

a two day hearing, on December 18, 2007, the trial court granted the district attorney's

motion for involuntary dismissal of petitioner's motion based on the court's finding that

there was no evidence that the district attorney had not complied with the 1994 Order, and

further finding that before petitioner filed his motion to enforce, petitioner did not possess

any facts supporting his assertion that the district attorney had previously failed to comply

with the court's order.

The trial court's ruling was affirmed on appeal by the Louisiana Third Circuit

Court of Appeal on March 4, 2009, the appellate court finding no manifest error by the

trial court, and further finding that examination of the record revealed that the district

attorney had completely complied with the 1994 order. *See Arvie v. Woodruff*, 08-735,

2009 WL 529863 (La. App. 3rd Cir. 3/4/09) 3 So.2d 91 (Table); *see also Arvie v.*

*Woodruff*, 08-735, 2008 WL 4724500 (La. App. 3rd Cir. 10/29/08), 994 So.2d 157

(Table).

In November, 1994, petitioner filed his first Application for Post-Conviction Relief in the Fifteenth Judicial District Court. The action was denied and dismissed by the district court in November, 1994. In this Application, petitioner complained of an alleged denial of access to courts during his direct appeal. [*See* rec. doc. 1-4, pg. 16].

Petitioner filed a second Application for Post-Conviction Relief in the Fifteenth Judicial District Court in January, 1995. Petitioner implies that the result and date of the result are "not yet provided to date." In this Application, petitioner raised a *Brady* claim based on eyewitness statements which were admittedly provided to petitioner in December, 1994 (and later attached to his July 2006 Motion to Enforce), a *Napue* claim based on a detective's statement (which was also attached to his July 2006 Motion), and claims which had been held abandoned on direct appeal based on unrecorded bench conferences during petitioner's 1989 trial. [*See* rec. doc. 1-4, pg. 16].

Petitioner filed a third Application for Post-Conviction Relief in the Fifteenth Judicial District Court in May, 1998. In this Application petitioner raised claims based on "conspiratorial conduct" between the trial judge, Byron Hebert, prosecutor, Calvin Woodruff, Jr., and his court appointed attorney, Patricia A. Thomas, by allegedly allowing perjured testimony of witnesses regarding the time of the armed robbery (1:00 p.m. vs. 1:58 p.m.), which petitioner admittedly discovered when he received a news article in September 1996 while incarcerated at Allen Correctional Center, and a claim based on an alleged relationship between appellate Judge Domengeaux and Woodruff,

who had allegedly previously been Judge Domengeaux's law clerk. [*See* rec. doc. 1-4, pg. 18]. Again, according to petitioner, the result and date of the result are "not yet provided."

Petitioner admits that he did not seek review of these three post-conviction applications in Louisiana's Supreme Court. [rec. doc. 1, ¶ 11(d), pg. 7].

Petitioner filed a fourth Application for Post-Conviction Relief in the Fifteenth Judicial District Court on December 17, 2008, one day after he mailed the instant federal petition.[3] In his Application, petitioner argued two claims for relief: (1) "The state court has denied the process due under the federal constitution by discarding and/or destroying potential key *Brady* material before or after trial." [rec. doc. 1-4, p. 20] and, (2) "The actual facts of the crime rendered Arvie's trial a fundamental miscarriage of justice as a gateway to file an untimely pleadings. See U.S.C.A. Const. Amends. 5, 14." [*Id.*, p. 21].

With respect to his first claim, petitioner alleges that he discovered Deborah Campbell's potential *Brady* testimony at the December 18, 2007 hearing on his Motion to Enforce judgement. [*Id.* at 20]. This application was denied on December 30, 2008 as untimely. [rec. doc. 1-4, pg. 26]. Petitioner alleges that, at the time the instant federal petition was filed, he intended to seek writs regarding the trial court's ruling in the Louisiana Third Circuit Court of Appeal by filing a Notice of Intent in the trial court on or before January 11, 2009. [rec. doc. 1, p. 8].

The instant petition for writ of *habeas corpus* presents the following claims for

---

[3] *See* rec. doc. 1-4, pg. 4 and pg. 3.

relief: (1) "Actual factual innocence rendered the proceedings a fundamental miscarriage of justice" [rec. doc. 1, ¶12, pg. 7]; and (2) "Trial counsel failed to conduct an adequate pretrial investigation of a MJS employee who report the crime. She was present before and after the offense. She identified a suspect immediately after the armed robbery." [*Id.* at pg. 10].

With respect to his first claim for relief, petitioner refers to his original handwritten non-conforming December 16, 2008 petition (rec. doc. 1-5, ¶ 4(a)(6)) wherein petitioner complains of alleged illegal pre-trial arrest and confinement based on conspiratorial acts of Louisiana and Texas law enforcement officials (including presentation of false testimony at his probable cause hearing), conspiratorial and improper conduct by the prosecutor at trial (including presentation of false testimony regarding the "timeline" of the offense and photo array identification of petitioner, making remarks about petitioner's failure to take the stand and not calling all witnesses under subpoena to testify at trial), *Brady* and *Napue* violations (altering investigative records, concealing exculpatory material), ineffective assistance of counsel (by withdrawing a motion to suppress a photo array on the basis it complied with the law, failing to impeach the prosecutor's "timeline" and photo array identification testimony of the chief detective, failing to object to testimony of state witnesses, failing to move for a judgment of acquittal on basis of prosecutorial misconduct, aiding the prosecutor to conceal *Brady* evidence, allowing petitioner to be gagged to preclude petitioner from arguing to the jury,

failing to conduct an adequate pre-trial investigation, and failing to call witnesses under subpoena by the State), and alleged improprieties in connection with petitioner's Public Record Request and subsequent Motion to Enforce.

With respect to petitioner's second claim for relief, petitioner argues that prior to his 1989 trial, his attorney, Patricia Thomas, told petitioner that she had talked with witness Deborah Campbell, and had learned that Campbell had not identified petitioner from a photo array. At trial Detective Broussard testified that Campbell had identified petitioner. Campbell did not appear at trial and Thomas told petitioner she did not have to appear. At the December 2008 hearing on petitioner's Motion to Enforce the order on his Public Records Act request, petitioner states that Campbell, testifying as an "adverse witness", testified that she had not been subpoenaed to testify at trial and that Thomas had not previously spoken to her. [rec. doc. 1, pg. 11-12]. Petitioner does not allege that Campbell testified that she had not, in fact, identified petitioner in the photo array.

Petitioner concedes that neither of these claims have been exhausted. [*Id*. at ¶ 13, pg. 17]. He also concedes that the instant petition for *habeas corpus* is untimely. In response to this court's inquiry regarding timeliness of the instant petition, petitioner responds by claiming that his "actual innocence" should permit him to litigate these otherwise untimely claims.[4] [*See* rec. doc. 1, ¶18; *See also* rec. doc. 1-5, ¶4(a)(6), pg. 8

---

[4] In support of his actual innocence claim petitioner argues, "In gist, the record facts proffers each state witness overtly or tacitly agreed with the prosecutor to testify falsely to facts constituting Arvie's involvement in the robbery before and at 1:00 p.m. The prosecutor and witness knew the crime occurred at 1:58 p.m. . . Prosecutor Woodruff's blueprint opening statements and the 'direct testimony of Richard Melancon, Kathy Mouton, Gay Hardy, and alleged codefendant Marcus Bonin support the claim. . . . The jury did not know Arvie had allegedly gone in MJS 45 minutes prior to the robbery. If so, they would not have voted to convict on the basis of the testimony." [rec. doc. 1, pp. 20]. He also claims that the evidence supporting his claim was newly discovered, therefore supporting an exception to this court's one year limitation period. [*Id*. at 21].

(arguing that the facts of this case act as " a gateway to file an untimely writ.")].

**LAW AND ANALYSIS**

## I. Exhaustion

It is clear from the above procedural history that petitioner has not properly exhausted any of the claims asserted herein in the Louisiana state courts. The requirement of exhaustion of state court remedies in a federal *habeas corpus* proceeding is well established. 28 U.S.C. § 2254(b); *See also*, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983). *Habeas corpus* relief is available to a person who is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. However, the right to pursue *habeas* relief in federal court is qualified. It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983). This requirement is not a jurisdictional bar but a procedural one erected in the interest of comity providing state courts first opportunity to pass upon and correct alleged constitutional violations. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438, 443 (1971); *Shute v. Texas,* 117 F.3d 233 (5th Cir. 1997).

In order to satisfy the exhaustion requirement, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts.

*Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Moreover, all claims must be presented to the state's highest court, even when review by that court is discretionary. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998) citing *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 1732-33 (1999). In Louisiana, the highest court is the Louisiana Supreme Court.

In this case, the record clearly reflects petitioner's failure to exhaust state court remedies. It is clear that the instant petition was filed contemporaneously with petitioner's fourth state application for post-conviction relief, in which it appears that petitioner has raised the same (or similar) claims as those presented herein. It is also clear, that at the time of filing, petitioner had planned on, but had not yet, sought review of the denial of that Application in the Louisiana Third Circuit Court of Appeal, and that accordingly, petitioner has not yet had the opportunity to properly raise his claims in the Louisiana Supreme Court. Further, to the extent that petitioner is attempting to assert claims presented in his three prior state post-conviction applications, petitioner admits that he never sought review of the claims presented therein in the Louisiana appellate courts.[5] This conclusion is supported by research which demonstrates the absence of a decision by the Louisiana Supreme Court with respect to any of petitioner's post-

---

[5]The undersigned notes that the claims raised in these Applications are most probably also procedurally defaulted given that petitioner failed to seek timely review in the Louisiana appellate courts and the time for seeking such review has most probably passed.

9

conviction applications.

Because this *habeas corpus* petition, on its face, reveals that the petitioner has not complied with the exhaustion requirement, this Court is expressly authorized to dismiss petitioner's claims. *Resendez v. McKaskle*, 722 F.2d 227 (5th Cir. 1984); *Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir.1998) *citing Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546, 2554, 115 L. Ed.2d 640 (1991); *Sterling v. Scott,* 57 F.3d 451, 454 (5th Cir.1995) (concluding that the district court was required to dismiss an unexhausted application). Additionally, under 28 U.S.C. § 2254(b)(1)(A)[6] the District court is precluded from granting *habeas* relief on an unexhausted claim.

Moreover, because the present petition raises only unexhausted claims, this court need not address the stay and abeyance procedure applicable to "mixed" *habeas corpus* petitions as set forth by the United States Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528 (2005). *See Benoit v. Cain,* 2007 WL 1434868, *2 (W.D.La. 2007) *citing Ricks v. Deville*, 2007 WL 624599, *4 (W.D.La. 2007) and *Barrett v. Michaels*, 2006 WL 2054460, *3 (W.D.La. 2006).

## II. One -Year Limitation "Grace Period"

Even if petitioner had properly exhausted his claims in the Louisiana state courts,

---

[6]§ 2254 provides, in pertinent part:
(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court **shall not be granted unless** it appears that--
**(A) the applicant has exhausted the remedies available in the courts of the State;**

it appears that the instant petition has been untimely filed.  The Antiterrorism and

Effective Death Penalty Act ("AEDPA") (1996) established a one-year time limit on

applications for federal *habeas corpus* relief by a prisoner who is in custody pursuant to a

state court judgment.[7]  The limitation period runs from the latest of four possible dates, as

follows:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) provides that "the time during which a properly filed

application for state post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of

limitation under this subsection."  Thus, the time during which a "properly filed

application for state post-conviction relief" is pending in the state courts is not counted

---

[7]Because the instant petition was filed on December 16, 2008, this court must apply AEDPA and its corresponding timeliness provision herein.  *Lindh v. Murphy*, 521 U.S. 321, 117 S.Ct. 2059 (1997).  This Court may raise the one-year time bar *sua sponte*.  *Kiser v. Johnson*, 163 F.3d 326 (5th Cir. 1999).

toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). However, any lapse of time before the proper filing of an application for state post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467 *citing Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).

Thus, in order to determine whether a petitioner has filed a timely application, the court must measure one year from the most recent date provided by subsections (A) through (D). Petitioner makes no claims in this petition that would implicate subsections (B) or (C).[8]

Because petitioner's conviction became final well before the effective date of AEDPA, April 24, 1996, under subsection (A), he is afforded one year from AEDPA's effective date to file his petition, *i.e.*, until April 24, 1997.[9] *State v. Flores*, 135 F.3d 1000, 1006 (5th Cir. 1998); *Flanagan v. Johnson*, 154 F.3d 196 (5th Cir. 1998). Thus, under subsection (A), in order to be timely, petitioner's federal *habeas* petition would have to have been filed by April 24, 1997. That is not the case herein. The instant petition was not filed until December 16, 2008.

---

[8]Petitioner's arguments with respect to subsection (D), that his claims are based on newly discovered facts which could not have been discovered through the exercise of due diligence, are addressed below.

[9] Petitioner's conviction was affirmed by the Louisiana Supreme Court on January 17, 1992. Thus, petitioner's conviction became final for purposes of the one year limitation period upon the expiration of the ninety-day period within which petitioner could have sought a writ of certiorari in the United States Supreme Court, that is, on April 17, 1992. *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999); *Scott v. Johnson*, 227 F.3d 260 (5th Cir. 2000); *Clay v. United States*, 123 S.Ct. 1072, 1077 at fn. 3 (2003); Supreme Court Rule 13.

Furthermore, petitioner cannot rely on statutory tolling. Petitioner had no properly filed state post-conviction proceedings pending during the "grace period" from April 1996-April 1997. Moreover, his third post-conviction application was not filed until May, 1998, over one year after the one-year limitation "grace" period expired.

Although petitioner filed and was granted a Public Record Act request in 1994, he admits compliance with that request in December 1994. Further, to the extent that petitioner complains of alleged non-compliance, his Motion to Enforce the Order was not filed until July, 2006, years after expiration of the one-year limitation "grace" period.

Finally, even if the Public Record Act request could be deemed pending during this entire period, such requests do not toll the statute of limitations. Statutory tolling requires that there be a request for collateral review with respect to the pertinent judgment. 28 U.S.C. § 2244(d). Requests for documents are not challenges to the conviction or judgment. Therefore, these requests do not toll the statute of limitations. *Rocker v. Travis*, 2007 WL 2903039, *2 fn.8 (E.D.La. 2007) *citing Parker v. Cain*, 2002 WL 922383, at *2 fn. 22 (E.D.La. 2002), *COA denied*, No. 03-30107 (5th Cir. June 23, 2003) and *Boyd v. Ward*, 2001 WL 533221, at *4 (E.D .La. May 15, 2001), *COA denied*, No. 01-30651 (5th Cir. Aug. 22, 2001) ("Motions seeking production of transcripts or other documents cannot fairly be considered applications for state post-conviction relief or other collateral review for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence.");

*Johnson v. Randle*, 28 Fed.Appx. 341 (6th Cir. 2001) (unpublished); *Osborne v. Boone*, 176 F.3d 489 (10th Cir. 1999) (unpublished); *See also Moore v. Cain*, 298 F.3d 361, 366-367 (5th Cir. 2002) (petition for mandamus did not toll federal limitation period because it did not challenge the judgment of conviction); *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (motion for appointment of *habeas* counsel does not toll the limitation period).

Accordingly, the instant petition is untimely unless it may be deemed filed pursuant to section 2244(d)(1)(D), which provides that the one-year limitations period may be determined from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." For the reasons which follow, however, the undersigned finds that petitioner's claims do not fall under

§ 2244(d)(1)(D).

First, petitioner's pleadings provide a litany of alleged errors that occurred prior to, or during, petitioner's 1989 trial which petitioner now claims entitles him to relief based on actual innocence. These claims include claims based on alleged illegal pre-trial arrest and confinement based on conspiratorial acts of Louisiana and Texas law enforcement officials (including presentation of false testimony at his probable cause hearing), conspiratorial and improper conduct by the prosecutor at trial (including presentation of false testimony regarding the "timeline" of the offense and photo array identification of

petitioner, making remarks about petitioner's failure to take the stand and not calling all witnesses under subpoena to testify at trial), ineffective assistance of counsel (by withdrawing a motion to suppress a photo array on the basis it complied with the law, failing to impeach the prosecutor's "timeline" and photo array identification testimony of the chief detective, failing to object to testimony of state witnesses, failing to move for a judgment of acquittal on basis of prosecutorial misconduct, allowing petitioner to be gagged to preclude petitioner from arguing to the jury, failing to conduct an adequate pre-trial investigation, and failing to call witnesses under subpoena by the State). It is inconceivable that the factual predicate of these claims for relief are newly discovered.

Further, with respect to petitioner's second claim for relief, although petitioner apparently asserts that he discovered the factual basis underlying this claim during and after the hearing on his Motion to Enforce the order entered in connection with his Pubic Records Act request, the record demonstrates otherwise. Petitioner admits that prior to his 1989 trial his attorney, Patricia Thomas, told him that she had talked with witness Deborah Campbell, and had learned that Campbell had not identified petitioner from a photo array. Petitioner was present at trial when Detective Broussard testified that Campbell had identified petitioner in the photo array. At the time of his 1989 trial, petitioner was well aware of the fact that Campbell did not testify. With these facts in hand, clearly petitioner could have asserted his claim against Thomas without the benefit of the testimony given by Campbell at the December 2008 hearing. "Title 28 U.S.C.

§2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a *habeas* petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998).

Further, even if petitioner could point to newly discovered facts in connection with this claim, in order to be eligible for tolling under § 2244(d)(1)(D), petitioner must demonstrate that he exercised due diligence to obtain these facts. Despite his knowledge of the alleged importance of witness Campbell during his 1989 trial, petitioner did not even attempt to discover any additional facts supporting his claim until five years after his trial ended, in 1994, when he filed his request under the Public Records Act. Under these circumstances, the undersigned cannot find that petitioner has shown that the subject evidence could not have been discovered previously through petitioner's exercise of due diligence. *See Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006) (defining "due diligence"in the context of second and successive *habeas* petitions against an objective standard, and placing the burden to make the showing on the petitioner).

The same is true as to petitioner's claims for *Brady* and *Napue* violations. Initially, the undersigned notes that petitioner has failed to enlighten the court as to what *Brady* evidence was allegedly withheld by the prosecution. However, even if there was such evidence withheld, petitioner did not even attempt to discover the factual basis for any such claims until five years after his trial ended in 1994. Further, petitioner admits

16

that he was provided with eyewitness statements and a statement of a detective in December, 1994 pursuant to his Public Records Act request. Indeed, these documents formed the basis of the *Brady* and *Napue* claims asserted in petitioner's second post-conviction application filed in January 1995. Moreover, petitioner admittedly discovered the alleged error in the "timeline" in September 1996 when he received a copy of a news article while incarcerated at Allen Correctional Center. Petitioner also knew of the alleged relationship between appellate Judge Domengeaux and Woodruff prior to filing his third post-conviction application in May, 1998, as this claim was included therein. Yet, petitioner never timely brought these claims before this court until over ten years later.

Petitioner appears to be arguing he is actually innocent of the crime of which he was convicted and therefore, the one-year limitation period does not apply in this case.[10] The one-year limitations period established by § 2244(d) contains no explicit exemption for petitioners claiming actual innocence of the crimes of which they have been convicted. *Cousin v. Leasing*, 310 F.3d 843, 849 (5th Cir.2002). As a consequence, a petitioner's claim of actual innocence is relevant to the timeliness of his petition only if the claim justifies equitable tolling of the limitations period. *Id.* Unfortunately for petitioner, the Fifth Circuit has previously held that claims of actual innocence do not, in

---

[10]The Fifth Circuit does not recognize freestanding claims of actual innocence on federal *habeas* review. *See Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir.2003) (collecting cases); *Foster v. Quarterman*, 466 F.3d 359, 367-368 (5th Cir. 2006) discussing *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

and of themselves, justify equitable tolling. *Id.; Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000) (petitioner's unsupported actual innocence claim does not constitute grounds for equitable tolling "given that many prisoners maintain they are innocent."); *Molo v. Johnson*, 207 F.3d 773, 775 (5th Cir.2000) (application of statute of limitations in the context of actual innocence claim does not render *habeas corpus* remedy inadequate or ineffective).

Furthermore, to the extent that equitable tolling might otherwise be available for claims of actual innocence, tolling is not appropriate under the circumstances present in this case. The Fifth Circuit has held that equitable tolling is permitted only "in rare and exceptional circumstances." *Cousin*, 310 F.3d at 848 *citing Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). To be entitled to equitable tolling, the petitioner must show "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085 (2007); *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807,161 L.Ed.2d 669 (2005). "[E]quity is not intended for those who sleep on their rights." *Coleman*, 184 F.3d at 402 *citing Fisher v. Johnson*, 174 F.3d 710 (5th Cir.1999). As previously discussed, the undersigned cannot find that petitioner exercised due diligence to discover the facts which allegedly underlie his claims for relief. That finding is fatal to application of the equitable tolling doctrine. *See Ford v. Johnson*, 263 F.3d 162 (5th Cir. 2001) *citing Miller v. New Jersey State Dept. of Corrections*, 145 F.3d

18

616, 618-19 (3d Cir.1998) (Equitable tolling inapplicable to actual innocence claim where the petitioner was not diligent in pursuing his claims); *Johnson v. Cain*, 31 Fed. Appx. 151 (5th Cir. 2001) (equitable tolling inapplicable to claim of actual innocence because applicant did not diligently pursue § 2254 relief).

### III. Actual Innocence Claim

Nevertheless, in deference to the petitioner's plight, and in recognition that the interface between actual innocence claims and the application of one year limitation period established by the AEDPA remains a developing area of the law, the undersigned will briefly review petitioner's claim of actual innocence under the guidelines suggested by the United States Supreme Court in *Schlup v. Delo*, 513 U.S. 298, 299, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). For the reasons which follow, however, petitioner's allegations are not of the type or quality demanded by the jurisprudence.

Prisoners asserting actual innocence as a gateway to federal *habeas* review must (1) present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537, 126 S.Ct. 2064, 2077 (2006) *citing Schlup v.*

*Delo*, 513 U.S. 298, 299, 324-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

The *Schlup* standard "is demanding and permits review only in the 'extraordinary' case." *Id*. at 538. Thus, the Fifth Circuit has emphasized that the petitioner "bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence", that "there is no presumption of innocence at a *habeas* proceeding" and that the petitioner "comes before the *habeas* court with a strong-and in the vast majority of the cases conclusive-presumption of guilt", and that the *Schlup* standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005).

In this case, petitioner does not rely on scientific evidence, physical evidence or trustworthy eyewitness testimony. To the contrary, petitioner relies solely on a litany of conclusory allegations – all of which remain uncorroborated, and unsupported. Further, it is apparent that the majority of the evidence relied on by the petitioner as "new", is not "new"; petitioner's original 58 page hand-written non-conforming *habeas corpus* petition asserts error which occurred prior to, and during, trial and thus, the factual basis of these claims was previously available to the petitioner or his attorney. Finally, even assuming *arguendo* that petitioner has presented "new" evidence of the type and quality necessary to establish actual innocence, it is abundantly clear that petitioner has failed to establish that in light of this "new" evidence " it is more likely than not that no reasonable juror

would have found petitioner guilty beyond a reasonable doubt."

Petitioner has utterly failed to demonstrate that witness Campbell would have provided any exculpatory evidence had she been called to testify at trial. Furthermore, even if she would have provided such testimony, petitioner has not established that a reasonable juror would have believed her account of what transpired in connection with her identification of the perpetrator from the photo array, over the account offered by Detective Broussard.

Thus, even if petitioner could surmount the obstacle to federal *habeas* review presented by his failure to exhaust and his untimely filing of the instant petition, and was permitted to litigate the merits of his "actual innocence" claim, dismissal of the petition is nevertheless mandated.

For all of the foregoing reasons,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

proposed legal conclusions reflected in this Report and Recommendation within ten

(10) days following the date of its service, or within the time frame authorized by

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error.  See, *Douglass v. United Services Automobile Association*, 79

F.3d 1415

(5th Cir.  1996).

   In Chambers, May 12, 2009, Lafayette, Louisiana.


C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE